**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JPMORGAN CHASE BANK, N.A.,    :  Case No. 20-CV-2162 (RRM) (JO)

    Plaintiff,       :

   against-        :

SYNCHRONY BANK; ELIZABETH OPTICAL, :
INC. D/B/A COHEN'S FASHION OPTICAL;
E & A OPTICAL, INC. D/B/A COHEN'S   :
FASHION OPTICAL; EDWARD GERSHOVICH;
and MARIANA GERSHOVICH,     :

    Defendants.      :

-------------------------------------------------------------x

**MEMORANDUM OF LAW OF PLAINTIFF JPMORGAN CHASE BANK, N.A.**
**IN SUPPORT OF MOTION FOR INTERPLEADER RELIEF**

BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
299 Park Avenue
New York, New York 10171

Plaintiff JPMorgan Chase Bank, N.A. ("Chase") submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. §§ 1335 and 2361 and Fed. R. Civ. P. 22 and 67(a), for an order (i) directing Chase to deposit the Funds (defined below) at issue in this action into the Registry of this Court; (ii) directing defendants to interplead their claims to those Funds; (iii) restraining and enjoining defendants from instituting or prosecuting any proceeding in any court that affects or may affect the Funds other than with this court; and (iv) fully and finally discharging Chase from any and all further liability with respect to the Funds, and dismissing Chase from this action.  This memorandum is supported by the Declaration of Theresa A. Kirk, a Division Leader of Chase, dated July 9, 2020 (the "Kirk Decl.") and the Declaration of Walter E. Swearingen, dated July 16, 2020 (the "Swearingen Decl.").

## PRELIMINARY STATEMENT

Plaintiff Chase is the classic example of a stakeholder needing interpleader relief under the federal interpleader statute.  Holding funds to which it has no claim, Chase faces competing claims to those funds from diverse claimants (the defendants in this action) that may expose Chase to different and multiple liabilities.  Accordingly, Chase has brought this interpleader action and now makes this motion seeking a judgment directing Chase to deposit the disputed funds into the registry of this Court, discharging Chase from any further liability with respect to the funds, dismissing Chase from the action, and restraining the adverse claimants from prosecuting their claims in any other court.

## STATEMENT OF FACTS

### A.  The Accounts Related To This Action, And The Deposit Account Agreement

Defendant Elizabeth Optical, Inc. d/b/a Cohen's Fashion Optical ("Elizabeth Optical") maintained a Chase checking account number ending in 0070 in its name (the

"Elizabeth Optical Account"); and defendant E & A Optical, Inc. d/b/a Cohen's Fashion Optical ("E &A," and together with Elizabeth Optical, the "Cohen Defendants") maintained a Chase checking account number ending in 8760 in its name (the "E & A Account," and together with the Elizabeth Optical Account, the "Cohen Business Accounts").[1]  *See* Complaint [ECF No. 1] ¶ 13; Kirk Decl. ¶¶ 3-4.  Defendant Mariana Gershovich, who is the president of each of the Cohen Defendants, is also a Chase customer along with her husband, Edward Gershovich (the "Gershovich Defendants"), and together they maintain a Chase checking account number ending in 6278 in their names (the "Gershovich Account," and together with the Cohen Business Accounts, the "Accounts").[2]  *See* Complaint ¶ 8; Kirk Decl. ¶ 9.

All of the Accounts are governed by Chase's Deposit Account Agreement (the "DAA"), the most recent version of which is dated March 15, 2020.  Kirk Decl. ¶ 32 and Ex. A. Pursuant to the DAA, Chase has broad authority to restrict accounts.  In part, the DAA provides that:

> There are many reasons we [*i.e.*, Chase] may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, or reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:
>         . . . .
> - We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
>           . . . .
> - We suspect that any transaction may involve illegal activity or may be fraudulent;
>           . . . .
> - We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
>           . . . .

---

[1] Each of the Cohen Defendants is a New York corporation with its principal place of business in New York, and therefore each is a citizen of New York.  *See* Complaint ¶¶ 4-5.
[2] The Gershovich Defendants are both citizens of New York.  *See* Complaint ¶¶ 6-7.

We will have no liability for any action we take under this section.

Kirk Decl. ¶ 32 and Ex. A at IX.B (p. 21).

The DAA expressly authorizes an interpleader action in the event of such adverse

claims:

> If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

Kirk Decl. ¶ 33 and Ex. A at IX.G (p. 22).

## B.  **The Dispute Between Synchrony And The Cohen Defendants**

On April 24, 2020, defendant Synchrony Bank ("Synchrony") [3] informed Chase

that Synchrony had claims against the Cohen Defendants, based on the following allegations:

- Prior to November 2019, Synchrony entered into CareCredit Card Acceptance Agreements for Participating Professionals with the Cohen Defendants (the "Provider Agreements"), pursuant to which the Cohen Defendants were permitted to accept Synchrony's "CareCredit" credit card as a form of payment for healthcare goods and services provided by the Cohen Defendants to Synchrony's cardholders.

- Synchrony made payments to the Cohen Defendants under the Provider Agreements by ACH transfers into the Cohen Business Accounts.

- Synchrony discovered evidence that led it to conclude that the Cohen Defendants had engaged in fraudulent transactions involving the CreditCare credit cards between November 2019 and March 2020.

*See* Kirk Decl. ¶ 5.

---

[3]  Synchrony is a citizen of Utah. *See* Complaint ¶ 3.

On or about April 28, 2020, the Cohen Defendants and Mariana Gershovich informed Chase, through an email from their counsel to a Chase branch manager, that they denied that they have any liability to Synchrony on various grounds.  Kirk Decl. ¶ 12.  In the same email, the Cohen Defendants and Mariana Gershovich asserted that Synchrony lacks any authority to debit the Accounts or request that Chase restrain or return funds from the Accounts. *Id.* ¶ 13.

### C.  Defendants' Competing Claims To The Funds In The Gershovich Account

On or about April 24, 2020, Synchrony requested that Chase (i) block access to the funds paid by Synchrony into the Cohen Business Accounts (or any account to which those funds could be traced) and then (ii) deliver those funds to Synchrony.  Kirk Decl. ¶ 6. Synchrony also delivered to Chase indemnification agreements so that Chase would honor its request.  *Id.*  Specifically, Synchrony requested that Chase return to it $4,693,806.42 from the Elizabeth Optical Account or any account into which the funds could be traced, and return to it $1,601,814.65 from the E & A Account or any account into which the funds could be traced.  *Id.* ¶ 7.

The end of the day balance on April 24, 2020 for each of the Elizabeth Optical Account and the E & A Account was zero.  Kirk Decl. ¶ 8.  Accordingly, there were no funds left in the Cohen Business Accounts that Chase could restrict or block.  *See id.*

In the course of tracing the funds, Chase learned that on or about April 10, 2020, the sum of $4,400,000.00 was transferred from the Elizabeth Optical Account to the Gershovich Account.  Kirk Decl. ¶ 9.  Chase further learned that on or about April 10, 2020, the sum of $1,750,000.00 was transferred from the E & A Account to the Gershovich Account.  *Id.* ¶ 10.

**D.  Chase's Restraint Of The Gershovich Account**

On or about April 27, 2020, Chase attempted to restrain the funds in the Gershovich Account pending resolution of the dispute between Synchrony, the Cohen Defendants, and the Gershovich Defendants.  Kirk Decl. ¶ 14.  As of May 4, 2020, there was $5,943,906.43 on deposit in the Gershovich Account that Chase attempted to restrain (the "Restrained Funds").  Kirk Decl. ¶ 15.

On May 13, 2020, Chase commenced this action, seeking interpleader relief with respect to the Restrained Funds.  Complaint [ECF No. 1] ¶ 1.  As of the date Chase filed the Complaint, there was $5,943,096.43 on deposit in the Gershovich Account.  Kirk Decl. ¶ 16. Chase filed the Complaint because Chase is ignorant of the respective rights of the Defendants and cannot determine, without hazard to it, the validity of any of the Defendants' arguments and thus cannot determine to which of the claimants the disputed funds belong.  *Id.* ¶ 31; Complaint ¶ 25.

Chase informed the Gershovich Defendants and the Cohen Defendants that it had restrained the Restrained Funds, both via letters sent by Chase to the Cohen Defendants on April 27, 2020, and via communications from Chase's outside counsel to Daniel Shapiro, who at the time was counsel for the Cohen Defendants and the Gershovich Defendants.  Kirk Decl. ¶ 17.

Chase also provided Mr. Shapiro with a copy of the Complaint on May 13, 2020 and requested that he consent to service on behalf of his clients.  Kirk Decl. ¶ 17.  On May 15, 2020, Mr. Shapiro informed Chase's counsel that he had not been retained to represent the Gershovich Defendants and the Cohen Defendants, but that it "was more than likely" that his firm would be retained.  Swearingen Decl. ¶ 3.  On May 26, 2020, counsel for Chase asked Mr. Shapiro whether he had been retained to represent the Gershovich Defendants and the Cohen

Defendants. *Id.* ¶ 4.  On May 27, 2020, Mr. Shapiro informed Chase that he would not be representing the Gershovich Defendants and the Cohen Defendants in the action. *Id.* ¶ 5.

### E.   Gershovich's Evasion Of The Restraint Of The Gershovich Account

On May 22, 2020, Mariana Gershovich went to a branch office of Chase located at 1667 Old Country Road, Plainview, New York, and notwithstanding the internal restraints placed on the Gershovich Account by Chase, was able to cause approximately $3,000,000 to be transferred from the Gershovich Account (the "Transferred Funds") to a Chase account number ending in 7893, which she also controlled but that was not subject to restraint by Chase (the "7893 Account").  Kirk Decl. ¶ 18.

On the same date, Mariana Gershovich then went to a different Chase branch and withdrew the Transferred Funds from the 7893 Account in the form of cashier's checks.  Kirk Decl. ¶ 19.  The cashier's checks were then deposited, presumably by Ms. Gershovich, into accounts at institutions including TD Bank, N.A. ("TD") and Ridgewood Savings Bank ("Ridgewood," and, together with TD and Citibank, N.A. ("Citibank"), the "Depositary Banks"). *Id.* ¶ 20.  Thereafter, on or about May 27, 2020, again notwithstanding the internal restraints placed on the Gershovich Account by Chase, Mariana Gershovich caused the remaining funds in the Gershovich Account to be withdrawn in the form of cashier's checks, which were deposited in one or more of the Depositary Banks. *Id.* ¶ 21.  In total, $2 million was deposited at Citibank, $1.9 million was deposited at TD Bank, and $1.5 million that Chase had attempted to restrain was deposited at Ridgewood Bank.  Kirk Decl. ¶ 22.

Thereafter, Chase contacted each of the Depositary Banks, informing them that the Restrained Funds had been transferred out of the Gershovich Account in error, and requesting that the funds that been deposited into their institutions be returned to Chase.  Kirk

6

Decl. ¶ 23.  From May 27, 2020 to the present, Chase has repeatedly attempted to obtain the

return of the funds, including by making multiple follow-up requests to each Depository Bank,

attempting to escalate attention to Chase's requests within each of the Depositary Banks, and

providing each Depositary Bank with a signed indemnification in order to secure the return of

the funds.  *Id.* ¶ 25.

   Ridgewood returned $1,090,198.35 on June 10, 2020, TD returned $1,900,000.00

on June 29, 2020, and Chase was able to successfully stop payment on a cashier's check in the

amount of $1,000,00.00 before it was deposited.  Kirk Decl. ¶¶ 24, 26.  Citibank, however,

refused to return the funds.  *See id.* ¶ 26.  Accordingly, as of the date of this filing, only

$3,990,198.35 of the originally Restrained Funds disputed by the Defendants remains within

Chase.  *Id.* ¶ 30.  Because Citibank has refused to return $2 million, all drawn on the Gershovich

Account, Chase is currently holding a total of $3,990,198.35 that is subject to the dispute

between Synchrony, the Cohen Defendants and the Gershovich Defendants (the "Funds").  *Id.*

Chase wishes to deposit these remaining Funds and be removed from this action, consistent with

its rights under its agreements with the Cohen Defendants and the Gershovich Defendants, and

consistent with the purposes of the interpleader statutes.

## **ARGUMENT**

### **CHASE, FACED WITH MULTIPLE COMPETING CLAIMS TO THE FUNDS, IS ENTITLED TO RELIEF UNDER THE INTERPLEADER STATUTE**

   The federal interpleader statute, 28 U.S.C. § 1335, grants federal district courts

original jurisdiction of interpleader actions if the plaintiff has property or money in its possession

worth more than $500 that is subject to the claims of adverse claimants, at least two of whom are

of diverse citizenship (as defined in 28 U.S.C. § 1332) and the money or property is deposited

into the registry of the court.  Alternatively, under Fed. R. Civ. P. 22, "[p]ersons with claims that

may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead," Fed. R. Civ. P. 22(a)(1), if the plaintiff can allege diversity jurisdiction.

Under 28 U.S.C. § 2361, a district court is empowered to issue process to all of the claimants and to restrain the claimants from instituting or prosecuting any proceeding in any state or federal court affecting the money or property being interpleaded until further order of the court.  "Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."  28 U.S.C. § 2361.

Chase is entitled to the relief sought in its motion under both the federal interpleader statute and under Federal Rule 22 interpleader.

It is entitled to relief under the federal interpleader statute because, as described above and set forth in the Kirk Declaration and the Complaint, the Funds at issue in this action are $3,990,198.35 (well in excess of the $500 minimum), and there are competing claims of adverse claimants to the Funds.  *See supra* at 3-4; Kirk Decl. ¶¶ 5, 12, 13; Complaint ¶¶ 15, 22, 23.  In addition, at least two of the adverse claimants are of diverse citizenship: Synchrony is a citizen of Utah and Mariana Gershovich is a citizen of New York.  *See supra* at 2 n. 2, 3 n. 3; Complaint ¶¶ 3, 7.

Likewise, Chase is entitled to relief under Federal Rule 22 interpleader.  As set forth in the Kirk Declaration and the Complaint, the Funds and Synchrony's claims to the Funds, both exceed $75,000.00.  *See* Kirk Decl. ¶¶ 7, 30; Complaint ¶ 18.  There is complete diversity between the parties, as plaintiff Chase is a citizen of the state of Ohio, while defendants are citizens of the states of Utah and New York.  *See* Complaint ¶¶ 2, 3-7.

8

Chase's motion seeks an order directing deposit of the Funds into the registry of the Court, which is sufficient to maintain the action. *See, e.g., Travelers Ins. Co. v. Estate of Garcia*, No. 00-CV-2130, 2003 WL 1193535, at *3 (E.D.N.Y. Feb. 4, 2003) (holding that court had jurisdiction over statutory interpleader action notwithstanding fact that stakeholder did not deposit funds until eight months after action was commenced); *American Smelting & Refining Co. v. Naviera Andes Peruana, S.A.,* 182 F. Supp. 897, 898 (S.D.N.Y.1959) (giving plaintiff 30 days to deposit entire amount in dispute with court). Therefore, Chase has satisfied all of the requirements for relief under the interpleader statute.

Moreover, the Court should exercise its authority under 28 U.S.C. § 2361 to restrain the Defendants from instituting or prosecuting any proceeding against Chase with respect to the Funds in any court pending the resolution of this action. Unrestrained, the Defendants may bring competing proceedings with respect to the claims asserted under the Provider Agreements and their based on their purported entitlement to the Funds. Because such actions will unjustly place Chase at risk of inconsistent orders and multiple liabilities, the Court should exercise its power to enjoin them.

"Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in [Rule 65 of the Federal Rules of Civil Procedure], which normally governs the issuance of injunctive relief." *New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 720 (E.D.N.Y. 2012) (quoting *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992)); *see also Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 319 (S.D.N.Y. 2014) (quoting *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013)). Where, as here, a stakeholder "acknowledges [its] liability to one or the other of the claimants, it is reasonable and sensible that interpleader should also protect the

9

stakeholder from vexatious and multiple litigation, and therefore[,] suits sought to be enjoined in such situations are squarely within the language of" Section 2361.  *Guardian Life*, 45 F. Supp. 3d at 319 (quoting *Bank of Am., N.A. v. Morgan Stanley & Co.*, No. 10–CV–6322, 2011 WL 2581765, at *4 (S.D.N.Y. June 24, 2011)).[4]

## <u>CONCLUSION</u>

For the foregoing reasons, Chase respectfully requests that its motion be granted in its entirety.

Dated:  New York, New York
   July 16, 2020

         BECKER, GLYNN, MUFFLY, CHASSIN
          & HOSINSKI LLP


       By: *s/Robin L. Alperstein*
         Robin L. Alperstidis
         Andrea Likwornik Weiss
         Walter E. Swearingen
       299 Park Avenue, 16th Floor
       New York, New York 10171
       Tel: (212) 888-3033
       ralperstein@beckerglynn.com
       aweiss@beckerglynn.com
       wswearingen@beckerglynn.com

       *Attorneys for Plaintiff*
       *JPMorgan Chase Bank, N.A.*

---

[4] In the normal course of events, Chase would be entitled to an award of attorneys' fees upon the granting of this motion. *See Apostolidis,* 841 F. Supp. 2d at 720-21 ("In general, a reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability."). However, Chase elects not to seek an award of attorneys' fees in connection with this action. Chase reserves the right to seek reimbursement of its costs from the Cohen Defendants and the Gershovich Defendants pursuant to the terms of the DAA. *See, e.g.,* Kirk Decl. Ex. A at IX.J at 22.