**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | Case No. 20-cv-2162 |
| Plaintiff, | |
| -against- | **ANSWER AND CROSSCLAIMS** |
| SYNCHRONY BANK; ELIZABETH OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL; E & A OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL; EDWARD GERSHOVICH; and MARIANA GERSHOVICH. | **JURY TRIAL DEMANDED** |
| Defendants. | |

ELIZABETH OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL ("EOI"), E & A OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL ("E&A"); EDWARD GERSHOVICH ("Edward"); and MARIANA GERSHOVICH ("Mariana") (collectively, "Defendants" or "Crossclaim-Defendants"), by and through their attorneys, McLaughlin & Stern, LLP, hereby answer Plaintiff's Complaint ("Complaint") as follows:

1.     Deny sufficient knowledge or information to respond to the allegations contained in Paragraph 1 of the Complaint.

2.     Deny sufficient knowledge or information to respond to the allegations contained in Paragraph 2 of the Complaint.

3.     Deny sufficient knowledge or information to respond to the allegations contained in Paragraph 3 of the Complaint.

4.     Admit the allegations contained in Paragraph 4 of the Complaint.

5.     Admit the allegations contained in Paragraph 5 of the Complaint.

6.     Admit the allegations contained in Paragraph 6 of the Complaint.

{N0158435.1}

7.      Admit the allegations contained in Paragraph 7 of the Complaint.

8.      Admit the allegations contained in Paragraph 8 of the Complaint.

9.      Admit the allegations contained in Paragraph 9 of the Complaint.

10.     Admit the allegations contained in Paragraph 10 of the Complaint.

11.     Admit the allegations contained in Paragraph 11 of the Complaint.

12.     Refer to the documents referenced in Paragraph 12 of the Complaint for the terms and conditions therein.

13.     Admit the allegations contained in Paragraph 13 of the Complaint.

14.     Refer to the documents referenced in Paragraph 14 of the Complaint for the terms and conditions therein.

15.     Deny the allegations contained in Paragraph 15 of the Complaint.

16.     Deny the allegations contained in Paragraph 16 of the Complaint.

17.     Deny sufficient knowledge or information to respond to the allegations contained in Paragraph 17 of the Complaint.

18.     Admit the allegations contained in Paragraph 18 of the Complaint.

19.     Refer to the documents referenced in Paragraph 19 of the Complaint for the terms and conditions therein.

20.     Refer to the documents referenced in Paragraph 20 of the Complaint for the terms and conditions therein.

21.     Refer to the documents referenced in Paragraph 21 of the Complaint for the terms and conditions therein.

22.     Admit the allegations contained in Paragraph 22 of the Complaint.

23.     Admit the allegations contained in Paragraph 23 of the Complaint.

24.     Admit the allegations contained in Paragraph 24 of the Complaint.

25.     Deny sufficient knowledge or information to respond to the allegations contained in Paragraph 25 of the Complaint.

26.     Refer to the documents referenced in Paragraph 26 of the Complaint for the terms and conditions therein.

27.     Refer to the documents referenced in Paragraph 27 of the Complaint for the terms and conditions therein.

28.     Repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

29.     Admit the allegations contained in Paragraph 29 of the Complaint.

30.     Deny the allegations contained in Paragraph 30 of the Complaint except admit that Chase has no claim to the Funds.

31.     Deny the allegations contained in Paragraph 31 of the Complaint.

32.     Repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

33.     Admit the allegations contained in Paragraph 33 of the Complaint.

34.      Deny the allegations contained in Paragraph 34 of the Complaint except admit that Chase has no claim to the Funds.

35.     Deny the allegations contained in Paragraph 35 of the Complaint.

## AFFIRMATIVE DEFENSES

The Complaint fails to state a claim, in whole or in part, upon which relief may be granted as against Defendants, and Plaintiff is no longer in possession of all of the Funds at issue.

## ANSWER TO CROSSCLAIMS

ELIZABETH OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL ("EOI"), E & A OPTICAL, INC. D/B/A COHEN'S FASHION OPTICAL ("E&A"); EDWARD GERSHOVICH ("Edward"); and MARIANA GERSHOVICH ("Mariana") (collectively, "Defendants"), by and through their attorneys, McLaughlin & Stern, LLP, hereby answer Synchrony Bank's Crossclaims ("Crossclaims") as follows:

1.      Deny the allegations contained in Paragraph 1 of the Crossclaims.

2.      Deny the allegations contained in Paragraph 2 of the Crossclaims.

3.      Deny the allegations contained in Paragraph 3 of the Crossclaims.

4.      Deny knowledge or information sufficient to respond to the allegations contained in Paragraph 4 of the Crossclaims.

5.      Deny knowledge or information sufficient to respond to the allegations contained in Paragraph 5 of the Crossclaims, except admit that certain Crossclaim-Defendants moved certain funds out of the Chase Bank accounts at issue prior to Synchrony Bank's request to Chase Bank to restrain the funds.

6.      Deny the allegations contained in Paragraph 6 of the Crossclaims.

7.      Admit the allegations contained in Paragraph 7 of the Crossclaims.

8.      Deny the allegations contained in Paragraph 8 of the Crossclaims.

9.      Deny the allegations contained in Paragraph 9 of the Crossclaims.

10.     Deny the allegations contained in Paragraph 10 of the Crossclaims.

11.     Deny knowledge or information sufficient to respond to the allegations contained in Paragraph 11 of the Crossclaims.

12.     Admit the allegations contained in Paragraph 12 of the Crossclaims.

13.     Admit the allegations contained in Paragraph 13 of the Crossclaims.

14.     Admit the allegations contained in Paragraph 14 of the Crossclaims.

15.     Admit the allegations contained in Paragraph 15 of the Crossclaims.

16.     Admit the allegations contained in Paragraph 16 of the Crossclaims.

17.     Deny the allegations contained in Paragraph 17 of the Crossclaims.

18.     Deny the allegations contained in Paragraph 18 of the Crossclaims.

19.     Admit the allegations contained in Paragraph 19 of the Crossclaims.

20.     Admit the allegations contained in Paragraph 20 of the Crossclaims.

21.     Admit the allegations contained in Paragraph 21 of the Crossclaims.

22.     Admit the allegations contained in Paragraph 22 of the Crossclaims.

23.     Admit the allegations contained in Paragraph 23 of the Crossclaims.

24.     Admit the allegations contained in Paragraph 24 of the Crossclaims.

25.     Admit the allegations contained in Paragraph 25 of the Crossclaims.

26.     Admit the allegations contained in Paragraph 26 of the Crossclaims.

27.     Admit the allegations contained in Paragraph 27 of the Crossclaims.

28.     Deny the allegations contained in Paragraph 28 of the Crossclaims.

29.     Refer to the documents referenced in Paragraph 29 of Crossclaims for the terms and conditions therein.

30.     Refer to the document referenced in Paragraph 30 of Crossclaims for the terms and conditions therein.

31.     Refer to the document referenced in Paragraph 31 of Crossclaims for the terms and conditions therein.

32.     Refer to the document referenced in Paragraph 32 of Crossclaims for the terms and conditions therein.

33.     Refer to the document referenced in Paragraph 33 of Crossclaims for the terms and conditions therein.

34.     Admit the allegations contained in Paragraph 34 of the Crossclaims.

35.     Admit the allegations contained in Paragraph 35 of the Crossclaims.

36.     Deny the allegations contained in Paragraph 36 of the Crossclaims.

37.     Deny the allegations contained in Paragraph 37 of the Crossclaims.

38.     Deny the allegations contained in Paragraph 38 of the Crossclaims.

39.     Deny the allegations contained in Paragraph 39 of the Crossclaims.

40.     Deny the allegations contain in Paragraph 40 of the Crossclaims.

41.     Deny the allegations contain in Paragraph 41 of the Crossclaims.

42.     Deny the allegations contain in Paragraph 42 of the Crossclaims.

43.     Deny the allegations contain in Paragraph 43 of the Crossclaims.

44.     Deny the allegations contained in Paragraph 44 of the Crossclaims, except admit that certain Crossclaim-Defendants moved certain funds out of the Chase Bank accounts at issue prior to Synchrony Bank's request to Chase Bank to restrain the funds.

45.     Deny the allegations contained in Paragraph 45 of the Crossclaims, except admit that certain Crossclaim-Defendants moved $4,400,000 out of a corporate Chase Bank account and into a personal Chase Bank account prior to Synchrony Bank's request to Chase Bank to restrain the funds.

46.     Deny the allegations contained in Paragraph 45 of the Crossclaims, except admit that certain Crossclaim-Defendants moved $1,750,000 out of a corporate Chase Bank account and

into a personal Chase Bank account prior to Synchrony Bank's request to Chase Bank to restrain the funds.

47.    Deny the allegations contained in Paragraph 47 of the Crossclaims.

48.    Deny the allegations contained in Paragraph 48 of the Crossclaims.

49.    Refer to the document referenced in Paragraph 49 of Crossclaims for the terms and conditions therein.

50.    Deny the allegations contained in Paragraph 50 of the Crossclaims.

51.    Deny the allegations contained in Paragraph 51 of the Crossclaims.

52.    Deny the allegations contained in Paragraph 52 of the Crossclaims, except admit that Mariana Gershovich deposited cashier's checks into TD Bank, Ridgewood Bank, and Citibank.

53.    Deny the allegations contained in Paragraph 53 of the Crossclaims.

54.    Deny the allegations contained in Paragraph 54 of the Crossclaims.

55.    Deny the allegations contained in Paragraph 55 of the Crossclaims, except admit that Kogan pled guilty to federal crime(s) and served jail time.

56.    Deny the allegations contained in Paragraph 56 of the Crossclaims.

57.    Refer to the document referenced in Paragraph 57 of Crossclaims for the terms and conditions therein.

58.    Deny the allegations contained in Paragraph 58 of the Crossclaims.

59.    Deny the allegations contained in Paragraph 59 of the Crossclaims.

60.    Repeat and reallege herein the allegations set forth above.

61.    Refer to the document referenced in Paragraph 61 of Crossclaims for the terms and conditions therein.

62.     Deny the allegations contained in Paragraph 62 of the Crossclaims.

63.     Refer to the document referenced in Paragraph 63 of Crossclaims for the terms and conditions therein.

64.     Refer to the document referenced in Paragraph 64 of Crossclaims for the terms and conditions therein.

65.     Refer to the document referenced in Paragraph 65 of Crossclaims for the terms and conditions therein.

66.     Deny the allegations contained in Paragraph 66 of the Crossclaims.

67.     Deny the allegations contained in Paragraph 67 of the Crossclaims.

68.     Deny the allegations contained in Paragraph 68 of the Crossclaims.

69.     Repeat and reallege herein the allegations set forth above.

70.     Refer to the document referenced in Paragraph 70 of Crossclaims for the terms and conditions therein.

71.     Deny the allegations contained in Paragraph 71 of the Crossclaims.

72.     Refer to the document referenced in Paragraph 72 of Crossclaims for the terms and conditions therein.

73.     Refer to the document referenced in Paragraph 73 of Crossclaims for the terms and conditions therein.

74.     Refer to the document referenced in Paragraph 74 of Crossclaims for the terms and conditions therein.

75.     Deny the allegations contained in Paragraph 75 of the Crossclaims.

76.     Deny the allegations contained in Paragraph 76 of the Crossclaims.

77.     Deny the allegations contained in Paragraph 77 of the Crossclaims.

78.     Repeat and reallege herein the allegations set forth above.

79.     Neither admit nor deny due to the assertion of law contained in Paragraph 79 of the Crossclaims.

80.     Deny the allegations contained in Paragraph 80 of the Crossclaims.

81.     Deny the allegations contained in Paragraph 81 of the Crossclaims.

82.     Repeat and reallege herein the allegations set forth above.

83.     Neither admit nor deny due to the assertion of law contained in Paragraph 83 of the Crossclaims.

84.     Deny the allegations contained in Paragraph 84 of the Crossclaims.

85.     Deny the allegations contained in Paragraph 85 of the Crossclaims.

86.     Repeat and reallege herein the allegations set forth above.

87.     Deny the allegations contained in Paragraph 87 of the Crossclaims.

88.     Deny the allegations contained in Paragraph 88 of the Crossclaims, except admit that certain Crossclaim-Defendants transferred certain funds to other Crossclaim-Defendants.

89.     Deny the allegations contained in Paragraph 89 of the Crossclaims.

90.     Deny the allegations contained in Paragraph 90 of the Crossclaims.

91.     Deny the allegations contained in Paragraph 91 of the Crossclaims.

92.     Deny the allegations contained in Paragraph 92 of the Crossclaims.

93.     Deny the allegations contained in Paragraph 93 of the Crossclaims.

94.     Deny the allegations contained in Paragraph 94 of the Crossclaims.

95.     Repeat and reallege herein the allegations set forth above.

96.     Deny the allegations contained in Paragraph 96 of the Crossclaims.

97.     Deny the allegations contained in Paragraph 97 of the Crossclaims.

98.   Deny the allegations contained in Paragraph 98 of the Crossclaims.

99.   Deny the allegations contained in Paragraph 99 of the Crossclaims, except admit that Mariana Gershovich withdrew funds.

100.   Deny the allegations contained in Paragraph 100 of the Crossclaims.

101.   Deny the allegations contained in Paragraph 101 of the Crossclaims.

102.   Deny the allegations contained in Paragraph 102 of the Crossclaims.

103.   Deny the allegations contained in Paragraph 103 of the Crossclaims.

104.   Deny the allegations contained in Paragraph 104 of the Crossclaims.

105.   Deny the allegations contained in Paragraph 105 of the Crossclaims.

106.   Deny the allegations contained in Paragraph 106 of the Crossclaims.

107.   Repeat and reallege herein the allegations set forth above.

108.   Deny the allegations contained in Paragraph 108 of the Crossclaims.

109.   Deny the allegations contained in Paragraph 109 of the Crossclaims.

110.   Deny the allegations contained in Paragraph 110 of the Crossclaims.

111.   Deny the allegations contained in Paragraph 111 of the Crossclaims.

112.   Deny the allegations contained in Paragraph 112 of the Crossclaims.

113.   Repeat and reallege herein the allegations set forth above.

114.   Deny the allegations contained in Paragraph 114 of the Crossclaims.

115.   Deny the allegations contained in Paragraph 115 of the Crossclaims.

116.   Deny the allegations contained in Paragraph 116 of the Crossclaims.

117.   Deny the allegations contained in Paragraph 117 of the Crossclaims.

118.   Repeat and reallege herein the allegations set forth above.

119.     Refer to the document referenced in Paragraph 119 of Crossclaims for the terms and conditions therein.

120.     Deny the allegations contained in Paragraph 120 of the Crossclaims.

121.     Deny the allegations contained in Paragraph 121 of the Crossclaims.

122.     Repeat and reallege herein the allegations set forth above.

123.     Refer to the document referenced in Paragraph 123 of Crossclaims for the terms and conditions therein.

124.     Deny the allegations contained in Paragraph 124 of the Crossclaims.

125.     Deny the allegations contained in Paragraph 125 of the Crossclaims.

126.     Admit that Synchrony Bank requests a trial by jury.

## FIRST AFFIRMATIVE DEFENSE

The Crossclaims fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Crossclaim-plaintiff's third and fourth claims are duplicative of its first and second claims.

## THIRD AFFIRMATIVE DEFENSE

Crossclaim-plaintiff's *quasi* contractual claims are barred because written contracts exist.

## FOURTH AFFIRMATIVE DEFENSE

Crossclaim-plaintiff's equitable claims for relief are barred because written contracts exist.

## FIFTH AFFIRMATIVE DEFENSE

Punitive damages are prohibited and waived by section 2 of the Provider Agreements.

## SIXTH AFFIRMATIVE DEFENSE

Crossclaim-plaintiff's claims are barred by principles of estoppel where it repeatedly and continuously informed Counterclaim-defendants that they would not be charged back if they

followed certain security protocols and then, in fact, reversed the charge backs at issue after confirming that the crossclaim-defendants followed said protocols.

## CROSSCLAIMS AGAINST SYNCHRONY BANK

### AS AND FOR A STATEMENT OF INTEREST IN THE FUNDS SUBJECT TO THE INTERPLEADER

The Defendants herein, by and through their undersigned attorneys, for their crossclaims against Synchrony Bank allege on knowledge as to themselves and their own actions and on information and belief as to others, as follows:

1. For the reasons set forth below, Defendants are the rightful and lawful owners of the Funds at issue having earned them from the retail sale of eyeglasses pursuant Synchrony Bank's policy and procedures.

2. EOI and E&A own Cohen's Fashion Optical franchises (collectively, the "stores").

3. The stores accept CareCredit cards as a form of payment. CareCredit is a credit card issued by Synchrony Bank.

4. EOI and E&A entered into a provider agreement (the "agreement") with Synchrony Bank governing the use of CareCredit cards and payment therefrom.

5. Among other things, the agreement provides in section 2(b) that EOI and E&A may process CareCredit transactions in accordance with *inter alia* written instructions from Synchrony Bank. If EOI or E&A follows these instructions, then Synchrony Bank is obligated to pay them pursuant to Section 3 of the agreement.

6. According to section 6 of the agreement, if a customer disputes a CareCredit transaction, Synchrony Bank may issue a chargeback to EOI or E&A. At which point, EOI and E&A may dispute the chargeback. Thereafter, Synchrony Bank will revisit the chargeback and

either sustain or reverse it based upon the backup submitted by EOI or E&A pursuant to the bank's policies.

7.   Synchrony Bank issued written instructions to vendors like EOI and E&A entitled "ID Requirements to Help Avoid Chargebacks."   Among other things, the instructions recommend that: (a) vendors see two forms of identification when a customer is applying for the CareCredit card on-site; (b) when a customer already has a CareCredit card and presents it on-site, the card itself serves as identification and additional identification does not need to be notated; (c) if the customer has the card but it cannot be swiped, then the vendor should check a form of primary identification from an approved list (such as a driver's license), verify that the name on the identification matches the name on the card, and capture the identification information on the bottom of the receipt; and (d) if the customer does not have the CareCredit card with him or her, then the vendor should call CareCredit Provider Services and verify the names on the account and the available credit. Any chargeback should be reversed if the vendor complies with these policies.

8.   Many Cohen's Fashion Optical franchisees having nothing to do with the defendants herein received and disputed several chargebacks from Synchrony Bank in 2019 that alleged fraud. They claimed, like the defendants herein, that these chargebacks were unwarranted and in violation of their agreements with Synchrony Bank.  As a result, on December 4, 2019, in response to a text from a Cohen's Fashion Optical franchisee confirming that it should continue processing CareCredit transactions under the same protocols in light of a continued uptick in chargebacks, Nicholas Pollicino, an Assistant Vice President for National Accounts at Synchrony Bank in charge of the Cohen's Fashion Optical account, wrote "I believe continuing as you have been is the best course of action.  You will win the disputes."  Later that month, Pollicino emailed EOI and E&A the following message, in pertinent part:

As the national account partner to Cohens, I am responsible for ensuring that our partnership is sound. I understand that you and your team are concerned regarding CareCredit transactions, as it may pertain to fraud and chargebacks. Earlier this year, I promised you that I would address this concern and ensure that we change the way that we manage disputes and fraud cases for Cohens Fashion Optical. Over the course of the past 6 months I have done exactly that. Since our last discussion this spring, CareCredit has put in place a new Credit & Risk leader who shares our vision of supporting your retail based environment. I have also been working very closely with the fraud team to develop a program that we will be rolling out early 2020 to stop fraud from occurring on the back end. Here are some of the major changes that you should be aware of today:

- As part of the Cohens relationship, **CareCredt will no longer shut down a merchant ID / location due to high fraud.** It is not your fault that a fraudulent transaction might occur. This is something that needs to be addressed on CareCredit's end to prevent fraudsters from being able to access credit at your locations[1]

- As long as you follow correct ID verification protocol during the apply and transact processes, **you will not be charged back** for a fraudulent transaction

- **We have removed the dispute limit from Cohens** that we have had in the past. Cohens locations win ≈80% of their disputes, which means that you are consistently following our protocol for follow up when a case is disputed … As long as you continue to win your disputes, you are off our radar. High chargebacks will still be monitored, but your team has done a great job in keeping those low. (Emphases in original)

Sean Galway has been working closely with your teams to ensure that they are up to speed on these changes. **Please rest assured, we will not shut down a location due to fraud. We will not charge back if you respond to notifications and have ID verified. These are changes that have been ok'd by CareCredit's senior leadership.** We value your partnership and want you to feel confident in CareCredit and that we listen to your feedback. (Emphasis added)

9.   On December 16, 2019, Sean Galway (Synchrony Bank's Practice Development Manager LI/NYC) forwarded Pollicino's email to Carmen Luna (Cohen's Fashion Optical Regional Manager) and wrote "Relax your mind [smile emoji]."

---

[1] It was publicly known at this time that Synchrony Bank suffered serious data breaches and self-reported same to several governmental agencies in 2018-2019.

10. On February 27, 2020, Luna spoke with Galway. Galway informed her that franchisees may continue accepting CareCredit and they won't be liable for any fraudulent transactions.

11. Luna requested that Galway confirm same in writing. Galway agreed and resent Pollicino's email the following day on February 28, 2020.

12. During this timeframe (November 2019-March 2020), Synchrony Bank issued chargebacks to EOI and E&A claiming that millions of dollars of CareCredit transactions were fraudulent. EOI and E&A disputed these chargebacks and submitted proof that they followed the proper policies and procedures set by Synchrony Bank. Synchrony Bank agreed and ultimately reversed and closed out the chargebacks at issue returning the money to EOI and E&A. EOI and E&A had these Funds credited to their Chase Bank business accounts and later transferred these Funds into the personal accounts belonging to Edward and Mariana at Chase Bank.

13. Notwithstanding the above, Synchrony Bank later terminated its agreements with EOI, E&A, and other Cohen's Fashion Optical franchisees as of March 31, 2020.

14. Moreover, on or around April 27, 2020, Synchrony Bank caused Chase Bank to freeze the Funds in EOI, E&A, Edward, and Mariana's bank accounts in the sum of nearly $6,000,000 claiming that the Funds were the result of fraudulent activity even though Synchrony Bank reached the opposite conclusion just weeks earlier.

15. Counsel for EOI, E&A, Edward, Mariana, and other affected parties wrote Chase Bank on April 28, 2020. Counsel explained *inter alia* that Synchrony Bank agreed that franchisees would not be responsible for chargebacks so long as they complied with CareCredit protocols and provided records substantiating same and that the chargebacks at issue have been resolved and closed by Synchrony Bank several weeks earlier.

16. Despite all of the documentary evidence supporting the franchisees' argument, Chase Bank did not want to get involved or otherwise support its account holders and filed the within interpleader action on May 13, 2020.

### AS AND FOR A FIRST CROSSCLAIM AGAINST SYNCHRONY BANK
### (DECLARATORY JUDGMENT)

17. Defendants herein repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

18. EOI and E&A sold eyeglasses to their customers and accepted CareCredit as payment pursuant to their agreements with Synchrony Bank.

19. Pursuant to these agreements, Synchrony Bank would pay EOI and E&A on all CareCredit card transactions so long as they followed Synchrony Bank's identification and security protocols.

20. The agreements permitted Synchrony Bank to issue chargebacks against EOI and E&A for all CareCredit card transactions that appeared fraudulent. EOI and E&A would dispute these chargeback and submit proof that they followed Synchrony Bank's identification and security protocols. At which time, the chargebacks would be reversed and Synchrony Bank would pay EOI and E&A pursuant to the agreements.

21. At all relevant times, EOI and E&A fully performed under the agreements and followed Synchrony Bank's identification and security protocols including *inter alia* those found in Synchrony Bank's literature entitled "ID Requirements to Help Avoid Chargebacks."

22. Synchrony Bank issued several million dollars in chargebacks to EOI and E&A alleging fraud from November 2019 through March 2020. EOI and E&A disputed these chargebacks and proved to Synchrony Back by providing indisputable documentary evidence that they followed Synchrony Bank's identification and security protocols at all times. As a result,

Synchrony Bank reversed all of the chargebacks marking them as "closed" and "no further action required" and deposited all of the Funds into EOI and E&A's business accounts at Chase Bank.

23. During this time frame, Pollicino, the AVP at Synchrony Bank responsible for the Cohen's Fashion Optical account, emailed EOI and E&A confirming Synchrony Bank's policy:

- **As long as you follow correct ID verification protocol during the apply and transact processes, you will not be charged back for a fraudulent transaction.**

- **Cohens locations win ≈80% of their disputes, which means that you are consistently following our protocol for follow up when a case is disputed … As long as you continue to win your disputes, you are off our radar. High chargebacks will still be monitored, but your team has done a great job in keeping those low.**

- **We will not charge back if you respond to notifications and have ID verified.**

- **These are changes that have been ok'd by CareCredit's senior leadership.**

24. These policies were later reconfirmed by Galway, Synchrony Bank's Practice Development Manager for the Long Island and New York City region.

25. EOI and E&A later transferred the Funds to the personal accounts belonging to Edward and Mariana at Chase Bank.

26. Notwithstanding that EOI and E&A followed Synchrony Bank's identification and security protocols, or that they won all of the disputed chargebacks with Synchrony Bank, or that Pollicino or Galway confirmed and then reconfirmed all of this, Synchrony Bank engaged in activity to freeze the Funds that were deposited into EOI and E&A's business accounts and later transferred into Edward and Mariana's personal accounts.

27. Upon information and belief, Synchrony Bank contacted Chase Bank claiming that EOI and E&A were engaged in fraudulent activity and that the Funds should be frozen regardless of which accounts the Funds were now located in. Synchrony Bank asserted these claims when

just weeks earlier it released the money to EOI and E&A finding that they complied with the identification and security protocols.

28. In direct response to Synchrony Bank's false claims, Chase Bank froze the Funds in EOI, E&A, Edward, and Mariana's accounts on or around April 27, 2020. They no longer have access to the Funds in these accounts and were harmed thereby.

29. Counsel for EOI, E&A, Edward, Mariana, and other affected parties wrote Chase Bank on April 28, 2020 in an effort to unfreeze the accounts. Chase Bank refused to do so and filed the within interpleader action on May 13, 2020.

30. There is an actual case and controversy with respect to the Funds at issue.

31. Based on the above, EOI, E&A, Edward, and Mariana seek a declaration that they are the sole, exclusive, and rightful owners of the Funds at issue and Synchrony Bank has no claim thereto.

32. There currently exists a substantial controversy between the parties hereto having adverse legal interests to the Funds, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

33. EOI, E&A, Edward, and Mariana have no adequate remedy at law.

### AS AND FOR A SECOND CROSSCLAIM AGAINST SYNCHRONY BANK
### (BREACH OF CONTRACTS)

34. Defendants herein repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

35. The agreement governs the relationship between Synchrony Bank and EOI/E&A.

36. Among other things, the agreement provides in section 2(b) that EOI and E&A may process CareCredit transactions in accordance with *inter alia* written instructions from Synchrony Bank.

37. If EOI or E&A follow these instructions, Synchrony Bank is obligated to pay them pursuant to Section 3 of the agreement.

38. According to section 6 of the agreement, if a customer disputes a CareCredit transaction, Synchrony Bank may issue a chargeback to EOI or E&A. At which point, EOI and E&A may dispute the chargeback. Thereafter, Synchrony Bank will revisit the chargeback and either sustain or reverse it based upon the backup submitted by EOI or E&A.

39. Synchrony Bank issued written instructions to vendors like EOI and E&A entitled "ID Requirements to Help Avoid Chargebacks." If vendors followed these instructions, any chargeback would be reversed.

40. Certain customers disputed charges on their CareCredit cards in 2019 alleging that charges incurred at EOI and E&A stores were fraudulent. The risk of loss related to these charges was an issue between Synchrony Bank and EOI/E&A. In or around December 2019, Nicholas Pollicino, an Assistant Vice President for National Accounts at Synchrony Bank in charge of the Cohen's Fashion Optical account, clarified who bears the risk of loss related to fraudulent charges as follows, in pertinent part:

- It is not your fault that a fraudulent transaction might occur. This is something that needs to be addressed on CareCredit's end to prevent fraudsters from being able to access credit at your locations

- As long as you follow correct ID verification protocol during the apply and transact processes, **you will not be charged back** for a fraudulent transaction (emphases in original)

- **We will not charge back if you respond to notifications and have ID verified. These are changes that have been ok'd by CareCredit's senior leadership.** (Emphasis added)

41. Sean Galway (Synchrony Bank's Practice Development Manager LI/NYC) later confirmed this policy to EOI/E&A both orally and in writing.

42. During this timeframe (November 2019-March 2020), Synchrony Bank issued chargebacks to EOI and E&A claiming that millions of dollars of CareCredit transactions were fraudulent. EOI and E&A disputed these chargebacks, submitted proof that they followed the proper policies and procedures set by Synchrony Bank, and Synchrony Bank agreed and ultimately reversed and closed out the chargebacks at issue returning the money to EOI and E&A.

43. Notwithstanding the above and marking the reversal of chargebacks as "closed" and "no further action required," Synchrony Bank in violation of the agreement and its policies reissued the chargebacks and caused Chase Bank to freeze these Funds in EOI, E&A, Edward, and Mariana's bank accounts in the sum of nearly $6,000,000 claiming that the Funds were the result of fraudulent activity even though Synchrony Bank reached the opposite conclusion just weeks earlier.

44. EOI and E&A fully performed under the agreements and in accordance with Synchrony Banks' policies and procedures.

45. Synchrony Bank breached its agreements with EOI and E&A by re-issuing the Chargebacks and then causing the Funds at issue to be frozen when EOI and E&A followed the bank's ID verification protocol and responded to notifications and ID requirements.

46. As a result of said breaches, the Defendants herein have been damaged in the sum of the funds interpleaded in this action.

### AS AND FOR A THIRD CROSSCLAIM AGAINST SYNCHRONY BANK (INDEMNIFICATION)

47. Defendants herein repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

48. The agreements at Section 13(b) among and between EOI and E&A, on the one hand,

and Synchrony Bank, on the other, provides that Synchrony Bank will indemnify EOI/E&A for all damages including *inter alia* attorneys' fees arising from its breach of the agreements.

49. Synchrony Bank breached the agreements as set forth above and by causing Chase Bank to freeze the funds belonging to the Defendants herein and having them expend attorneys' fees to reclaim said funds in this action.

50. Synchrony Bank's actions and breach of the agreements trigger its contractual duty to indemnify the defendants herein for, among other things, loss of interest and use of the funds and attorneys' fees.

51. Accordingly, the defendants herein are entitled to indemnification from Synchrony Bank with respect to all damages arising out of Synchrony Bank's breach of the agreements including without limitation attorneys' fees, costs, disbursements, and interest.

## AS AND FOR A FOURTH CROSSCLAIM AGAINST SYNCHRONY BANK (PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE)

52. Defendants herein repeat and reallege each and every allegation set forth above to the same extent as if those allegations were set forth in full herein.

53. Synchrony Bank made clear and unambiguous written promises to EOI and E&A. Those promises included, among others:

- **As long as defendants follow correct ID verification protocol during the apply and transact processes, they will not be charged back for a fraudulent transaction.**

- **Defendants are consistently following the protocol for disputed cases.**

- **Chargebacks at issue reversed, "closed," and "no further action required."**

- **Defendants will not get charged back if they respond to notifications and have ID verified.**

- **It is not defendant's fault that a fraudulent transaction might occur. This is something that needs to be addressed on CareCredit's end to prevent fraudsters from being able to access credit at defendant's locations.**

- **Defendants should continue business as usual and will win the disputes.**

- **These promises have been "ok'd" by CareCredit's senior leadership.**

54. Two senior officials at Synchrony Bank confirmed these promises in writing.

55. EOI and E&A followed Synchrony Bank's identification and security protocols and won all of the disputed chargebacks with Synchrony Bank.

56. EOI and E&A reasonably and foreseeably relied on Synchrony Bank's promises that if they followed correct ID verification protocol during the apply and transact processes, then they will not be charged back for fraudulent transactions; that since they followed Synchrony Bank's protocols for disputed cases, the chargebacks at issue were reversed, "closed," and "no further action [was] required"; that if they followed the literature on how to avoid chargebacks (which they did); they will not be charged back; that it is not defendants' fault that fraudulent transactions might occur and this is something that needs to be addressed on CareCredit's end to prevent fraud; and finally, that defendants should continue as is because that is "the best course of action" and they "will win the disputes."

57. As a result, EOI and E&A continued to buy and sell merchandise and win chargebacks relying on Synchrony Bank's promises.

58. EOI and E&A sustained unconscionable injury in reliance on Synchrony Bank's written promises. Synchrony Bank, after investigating the matter, reversed the chargebacks at issue in accordance with its promises; but then weeks later, reversed course and sought to freeze said funds in violation of its previous written promises.

## RESERVATION OF RIGHTS

Defendants herein reserve the right to amend or further plead any other defenses and crossclaims applicable to any and all counts after a reasonable opportunity for discovery.

**WHEREFORE**, the Defendants herein pray for judgment as follows:

1.      That the Court enter a judgment (a) dismissing the Complaint and Crossclaims against Crossclaim-Defendants in their entirety and with prejudice and (b) in favor of the Crossclaim-Defendants herein and against Plaintiff and Crossclaim-Plaintiff, awarding Crossclaim-Defendants herein the interpleaded funds and their costs, disbursements, interest, and reasonable attorneys' fees and expenses incurred in connection with this action;

2.      That a declaratory judgment be issued (a) declaring that the Defendants herein are the sole, exclusive, and rightful owners of the funds at issue and Synchrony Bank has no claim thereto, (b) that the Clerk of the Court be directed to pay the interpleaded funds deposited into the Court to the Defendants herein, and (c) awarding the Defendants herein their costs, disbursements, interest, and reasonable attorneys' fees and expenses incurred in connection with this action;

3.      That a money judgment be issued (a) in the sum of the interpleaded funds in favor of the Defendants herein and against Synchrony Bank, (b) directing that the Clerk of the Court to pay the interpleaded funds deposited into the Court to the Defendants herein, and (c) awarding the Defendants herein their costs, disbursements, interest, and reasonable attorneys' fees and expenses incurred in connection with this action; and

4.     That Defendants herein be awarded such other and further relief as the Court may

deem just and proper.

Dated: New York, New York
       July 17, 2020

                                    McLAUGHLIN & STERN, LLP

                                    By:  Alan E. Sash
                                         _____
                                    Alan E. Sash
                                    260 Madison Avenue
                                    New York, NY 10016
                                    (212) 448-1100
                                    *Attorneys for Defendants*
                                    *ELIZABETH   OPTICAL,   INC.   D/B/A*
                                    *COHEN'S  FASHION  OPTICAL,  E  &  A*
                                    *OPTICAL, INC. D/B/A COHEN'S FASHION*
                                    *OPTICAL;  EDWARD  GERSHOVICH;  and*
                                    *MARIA GERSHOVICH*